IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

IN RE:

| | |
|---|---|
| James Arthur and Debra Ann Miller | 5:06-bk-72691 |
| Rebecca Ann Lindon | 5:06-bk-72775 |
| Timothy Gordon and Janet V. Mathis | 5:07-bk-71183 |
| Caroline Elaine Hogan | 5:07-bk-71444 |
| Mark Eugene and Carolyn Louise Causey | 5:07-bk-71517 |
| Debtors | |
| | Ch. 13 |

## ORDER

The specific issue before the Court in the above captioned cases relates to the debtors' proposed payments to unsecured creditors in each of the debtors' respective plans. Each case has in common the following factors: (1) the debtors all have incomes above the median family income for the state of Arkansas; (2) the debtors' plans do not propose to pay into the plan for the benefit of unsecured creditors either (i) the monthly disposable income as determined by Form B22C (the means test), or (ii) a 100% dividend to unsecured creditors; and (3) the chapter 13 trustee and, in one case, an unsecured creditor have objected to confirmation of the debtors' plans. The Court heard arguments in these cases on October 17, 2007, and gave all parties until December 14, 2007, to submit post-trial briefs. For the reasons stated below, the Court sustains the objections of the chapter 13 trustee and the objecting unsecured creditor.

**Jurisdiction**

This Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(L). The following order constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052, made applicable to these proceedings under Federal Rule of Bankruptcy Procedure 9014.

**Individual Cases**

The following information was stipulated by the parties.

### Miller

James and Debra Miller filed their joint petition for relief under chapter 13 on November 17, 2006.  They reported a net monthly income of $4361.78 on Schedule I, and monthly expenses totaling $2349.00 on Schedule J of their petition, leaving an excess of $2012.78 per month.  According to Form B22C, the Millers have a monthly disposable income of $186.09, as reported on line 58, resulting in a total disposable income amount of $11,165.40 ($186.09 X 60 months).  The Millers' unsecured claims total $18,118.22, and they have proposed to pay zero to their unsecured creditors under the plan.

### Lindon

Rebecca Ann Lindon filed her petition for relief under chapter 13 on November 28, 2006.  She reported a net monthly income of $2210.51 on Schedule I, and monthly expenses totaling $2110.50 on Schedule J of her petition, leaving an excess of $100.01 per month.  According to Form B22C, Lindon has a monthly disposable income of $3420.61, as reported on line 58, resulting in a total disposable income amount of $205,236.60 ($3420.61 X 60 months).  Lindon's unsecured claims total $61,503.44, and she has proposed to pay $139.27 to her unsecured creditors under the plan.

### Mathis

Timothy and Janet Mathis filed their joint petition for relief under chapter 13 on April 20, 2007.  They reported a net monthly income of $4328.81 on Schedule I, and monthly expenses totaling $3832.45 on Schedule J of their petition, leaving an excess of $496.36 per month.  According to Form B22C, the Mathises have a monthly disposable income of $284.30, as reported on line 58, resulting in a total disposable income amount of $17,058.00 ($284.30 X 60 months).  The Mathises' unsecured claims total $26,159.66, and they have proposed to pay $2968.03 to their unsecured creditors under the plan.

### Hogan

Caroline Elaine Hogan filed her petition for relief under chapter 13 on May 11, 2007. She reported a net monthly income of $2207.78 on Schedule I, and monthly expenses totaling $2126.67 on Schedule J of her petition, leaving an excess of $81.11 per month. According to the Form B22C filed by Hogan, she has a monthly disposable income of $3028.57, as reported on line 58, resulting in a total disposable income amount of $181,714.20 ($3028.57 X 60 months). According to the chapter 13 trustee, Hogan has a monthly disposable income of $2630.67, resulting in a total disposable income amount of $157,840.20 ($2630.67 X 60 months).[1] Hogan's unsecured claims total $86,066.33, and she has proposed to pay $3025.047 to her unsecured creditors under the plan.

### Causey

Mark and Carolyn Causey filed their joint petition for relief under chapter 13 on May 17, 2007. They reported a net monthly income of $4037.68 on Schedule I, and monthly expenses totaling $2838.03 on Schedule J of their petition, leaving an excess of $1199.65 per month. According to the Form B22C filed by the Causeys, they have a monthly disposable income of $320.61, as reported on line 58, resulting in a total disposable income amount of $19,236.60 ($320.61 X 60 months). According to the chapter 13 trustee, the Causeys have a monthly disposable income of $386.78, resulting in a total disposable income amount of $23,206.80 ($386.78 X 60 months).[2] The Causeys' unsecured claims total $55,640.71, and they have proposed to pay $5628.55 to their unsecured creditors under the plan.

## Applicable Law

According to the bankruptcy code, the court shall confirm a plan if the requirements of

---

[1] The trustee included a deduction of $200.00 for each of the debtor's two vehicles, which were described as older vehicles with high mileage.

[2] The higher figure reported by the trustee is the result of the trustee placing the vehicle with a higher monthly payment on line 28 of Form B22C instead of line 29.

11 U.S.C. § 1325(a) are met.  However, if either the trustee or an unsecured creditor objects to confirmation, as they have in these cases, the court cannot confirm the plan unless the additional requirements of § 1325(b) are also met.  According to subsection (b), the plan must provide that all of the debtor's projected disposable income that will be received during the applicable commitment period be applied to make payments to unsecured creditors under the plan.  11 U.S.C. § 1325(b).[3]

The code provides some guidance to this requirement.  Disposable income is defined as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed."  11 U.S.C. § 1325(b)(2).  This definition requires further clarification of two phrases: "current monthly income" and "amounts reasonably necessary to be expended." Current monthly income is defined as "the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period ending on . . . the last day of the calendar month immediately preceding the date of the commencement of the case . . . ."  11 U.S.C. § 101(10A).  In other words, in each of the cases before the Court, the debtors were required to figure their respective disposable incomes by averaging their monthly income for the six months *preceding* the filing of their bankruptcy petitions.  In most of these cases, that resulted in a disposable income figure that exceeds the debtors' present (and actual) disposable income.

---

[3] 11 U.S.C. § 1325(b)(1) states:
If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

4

The second phrase--amounts reasonably necessary to be expended--is a little easier. The amounts reasonably necessary for the debtor's maintenance and support is dependent upon the debtor's current monthly income. If the debtor's current monthly income is equal to or below the median family income of the applicable state, the debtor would use Schedule J to determine which of the debtor's current expenses were reasonable. If the debtor's current monthly income is greater than the median family income for the state, the debtor would look to Form B22C to determine the debtor's expenses for maintenance and support. 11 U.S.C. § 1325(b)(3).[4] Because each of the debtors in the cases before the Court have income that exceeds the median family income for the state of Arkansas, their expenses are taken from Form B22C. Those expenses, combined with the debtors' current monthly income, provide the debtors and the Court with the debtors' disposable income according to the code. With that information, the debtors should then be able to propose a plan that would pay at least that amount to their unsecured creditors, as required by § 1325(b)(1)(B). Unfortunately, most of the debtors in these cases have actual income that is sufficiently below the code-defined current monthly income, and may not be able to propose a feasible plan.

But it doesn't stop there. The code says that all of the debtor's *projected* disposable income that will be received during the applicable commitment period must be applied to make payments to unsecured creditors under the plan. Although "disposable income" and "current monthly income" are defined in the code, "projected disposable income" is not. The Bankruptcy Appellate Panel of the Eighth Circuit has recognized that at least three interpretations of the meaning of "projected disposable income" have developed in the context of § 1325(b) and the means test. *Coop v. Frederickson* (*In re Frederickson*), 375 B.R. 829, 833 (B.A.P. 8th Cir. 2007). First, some courts continue to calculate projected disposable income from the debtor's schedules I and J. *Id.* (citing *In re*

---

[4] 11 U.S.C. § 1325(b)(3) states, in relevant part,
Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than . . . the median family income of the applicable State . . . ."

5

*Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006) as an example of this approach).  The *Hardacre* court believed that the term "projected disposable income" must be based upon "the debtor's anticipated income during the term of the plan, not merely an average of her prepetition income."  *Hardacre*, 338 B.R. at 722.

Second, some courts calculate projected disposable income from either Form B22C or the debtor's schedules I and J, whichever more accurately reflects the debtor's current ability to pay creditors.  *Frederickson*, 375 B.R. at 833 (recognizing *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006) as an example of this approach).  The *Jass* court found that the significance of the word "projected" was that it "requires the Court to consider both future and historical finances of a debtor in determining compliance with § 1325(b)(1)(B)."  *Jass*, 340 B.R. at 416.  According to *Jass*, the court would presume the figure from Form B22C is the correct projected disposable income unless the debtor can show a substantial change in circumstances to rebut the figure.  *Id*. at 418.

Finally, some courts follow a plain-meaning approach and only use Form B22C to determine projected disposable income.  *Frederickson*, 375 B.R. at 833 (recognizing *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006) as an example of this approach).  According to *Alexander*, "in order to arrive at 'projected disposable income,' one simply takes the calculation mandated by § 1325(b)(2) and does the math."  *Alexander*, 344 B.R. at 749.  The Bankruptcy Appellate Panel of the Eighth Circuit, in a two to one decision, agreed with the third approach and found that "projected" "merely explains the treatment of 'disposable income.'"  *Frederickson*, 375 B.R. at 833.  According to the panel, "'[p]rojected disposable income' is the disposable income calculated on Form 22C extrapolated over the applicable commitment period.  It is the amount to be paid on unsecured claims.  The statute requires no more."  *Id*. at 835.  As recognized by another court, "Congress has already determined the fairness of application of the means test, and a major objective of the legislation was to remove judicial discretion from the process."  *In re Hartwick*, 352 B.R. 867, 870 (Bankr. D. Minn. 2006).  Because *Frederickson* requires the disposable income of an above median family income debtor to be calculated

6

based on Form B22C and extrapolated over the 60 month plan period, the debtors' plans in the cases before the Court cannot be confirmed. But that is not the end of the story.

In a case decided after *Frederickson*, the dissenting judge in *Frederickson* denied confirmation of a debtor's plan because, like here, the debtor proposed to pay less than the amount required by Form B22C. *In re Riding*, 377 B.R. 239 (Bankr. W.D. Mo. 2007). Although the debtor offered to demonstrate that she was not capable of making the monthly payment dictated by Form B22C, the court did not allow her that opportunity. *Id.* at 241. It said that based on the Bankruptcy Appellate Panel's holding, projected disposable income is the disposable income from Form B22C, "regardless of whether the debtor would appear to be capable of paying more, as in *Frederickson*, or alleges she is incapable of paying such amount, as here." *Id.* at 242.

In so ruling, the *Riding* court suggested that the result of the *Frederickson* decision was that an above median income debtor who is unable to pay the amount required by Form B22C is left with two difficult choices. First, the debtor can propose a plan that will, most likely, not be confirmed because she is unable to make the required payments.[5] Or, second, the debtor can convert to a chapter 7 and be subject to the United States Trustee's scrutiny under § 707(b) for presumption of abuse because her forms show she can make payments to her unsecured creditors. *Id.* However, if a chapter 13 debtor cannot propose a feasible plan because of Form B22C's required computation of disposable income, this Court believes that conversion to chapter 7 remains viable. Any scrutiny for presumption of abuse would need to be based on § 707(b), the only subsection that references "abuse" in relation to the filing of a case. But, the test for abuse under § 707(b), whether based on a presumption as defined in § 707(b)(2), or on either bad faith or the totality of the circumstances of the debtor's financial situation as recognized in § 707(b)(3), relates specifically to a case filed by an individual debtor *under* chapter 7, not to a case filed

---

[5] 11 U.S.C. § 1325(a)(6) requires that a "debtor will be able to make all payments under the plan and to comply with the plan." This is typically referred to as the feasibility test.

7

under chapter 13 and later converted.[6] *See In re Fox*, 370 B.R. 639 (Bankr. D.N.J. 2007); *but see In re Kellett*, 379 B.R. 332 (Bankr. D. Or. 2007); *In re Perfetto*, 361 B.R. 27 (Bankr. D.R.I. 2007). Therefore, § 707(b) may not even apply to a debtor who files a case under chapter 13 in good faith but is unable to propose a feasible plan based on Congress's mandated means test for above income debtors. It is incongruous to require the debtor to follow a code mandated formula to determine disposable income in a chapter 13 case, and then not allow the same debtor relief under another chapter when the debtor cannot propose a feasible plan because of that code mandated formula. Restricting the presumption of abuse test to cases filed under chapter 7 still allows the unfortunate chapter 13 debtor who is precluded from confirming a chapter 13 plan access to protection under the code, without diminishing the United States Trustee's review of the case under § 707(a).

The language of the statute is clear, and the function of the Court is to enforce the statute according to its terms. *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004). There is nothing in the code that suggests any latitude. For the reasons stated above, the Court sustains the chapter 13 trustee's objection to confirmation related to the debtors' misstatement of disposable income in each of the above captioned cases, and sustains the unsecured creditor's objection to confirmation in the Lindon case. The debtors shall have 20 days from the entry of this order to amend their respective plans.

IT IS SO ORDERED.

---

[6] 11 U.S.C. § 707(b)(1) states, in relevant part,
After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any) or any party in interest, may dismiss a case *filed by an individual debtor under this chapter* whose debts are primarily consumer debts . . . . (emphasis added).

January 29, 2008 /s/ Ben Barry
_____   _____
DATE   BEN T. BARRY
   UNITED STATES BANKRUPTCY JUDGE

cc:   Jack Martin and Emily J. Henson, attorneys for the debtors
   Joyce B. Babin, chapter 13 trustee
   Robert D. Teague, attorney for William Johnson, unsecured creditor
   Chuck Tucker, Ass't United States Trustee

9